# EXHIBIT 4

IN THE MATTER OF THE CLAIM OF

ELMER E. KELLER
ISABEL KELLER

Under the International Claims Settlement
Act of 1949, as amended

Claim No.CU-1615

Decision No.CU 3159

PROPOSED DECISION

This claim against the Government of Cuba, under Title V of the International Claims Settlement Act of 1949, as amended, was presented by ELMER E. KELLER and ISABEL KELLER, and is based upon the asserted loss of $4,400.00, sustained in connection with the ownership of a stock interest in Industrial Bank, Havana, Cuba. Claimant, ELMER E. KELLER, has been a national of the United States since his birth in the United States. ISABEL KELLER has been a United States national since her naturalization on August 13, 1935.

Under Title V of the International Claims Settlement Act of 1949 [78 Stat. 1110 (1964), 22 U.S.C. §§1643-1643k (1964), as amended, 79 Stat. 988 (1965)], the Commission is given jurisdiction over claims of nationals of the United States against the Government of Cuba. Section 503(a) of the Act provides that the Commission shall receive and determine in accordance with applicable substantive law, including international law, the amount and validity of claims by nationals of the United States against the Government of Cuba arising since January 1, 1959 for

> losses resulting from the nationalization, expropriation, intervention or other taking of, or special measures directed against, property including any rights or interests therein owned wholly or partially, directly or indirectly at the time by nationals of the United States.

Section 502(3) of the Act provides:

> The term 'property' means any property, right or interest including any leasehold interest, and debts owed by the Government of Cuba or by enterprises which have been nationalized, expropriated, intervened, or taken by the Government of Cuba and debts which are a charge on property which has been nationalized, expropriated, intervened, or taken by the Government of Cuba.

The record contains stock certificate Nos. 31, 87 and 279 issued to claimant ELMER E. KELLER on May 5, 1947, December 13, 1949 and April 1, 1955, respectively for a total of 30 shares in the Industrial Bank. Further, the record contains stock certificate Nos. 235 and 280 issued to claimant ISABEL KELLER on July 21, 1954 and April 1, 1955, respectively, for a total of 14 shares in the Industrial Bank.

The record discloses that on October 13, 1960, the Government of Cuba published its Law 891 in the Cuban Official Gazette (Special Edition). This Law declared banking to be a public function to be exercised by the State. Article 2 of the Law provided for the nationalization of banking companies and the transfer of their assets and liabilities to the National Bank of Cuba, an agency of the Cuban Government. Accordingly, the Commission finds that Industrial Bank was nationalized by the Government of Cuba on October 13, 1960.

The evidence of record reflects that the Industrial Bank was organized under the laws of Cuba and does not qualify as a corporate "National of the United States" defined under Section 502(1)(B) of the Act as a corporation or other legal entity organized under the laws of the United States, or of any State, the District of Columbia or the Commonwealth of Puerto Rico, whose ownership is vested to the extent of 50 per centum or more in natural persons who are citizens of the United States. Therefore, the Industrial Bank may not file a claim under the Act. However the claimants, as United States nationals, are entitled to file this claim based upon their ownership of the shares in question.

CU-1615

(See <u>Claim of Parke, Davis & Company</u>, Claim No. CU-0180, 1967 FCSC Ann. Rep. 33.)

The Commission concludes that as a result of the nationalization by the Government of Cuba of the Industrial Bank, claimants suffered a loss within the meaning of Title V of the Act.

Claimants have stated their combined loss in the amount of $4,400.00 which they assert to be the purchase price of the shares which they hold in the Industrial Bank.

The Act provides in Section 503(a) that in making determinations with respect to the validity and amount of claims and value of properties, rights, or interest taken, the Commission shall take into account the basis of valuation most appropriate to the property and equitable to the claimant, including but not limited to fair market value, book value, going concern value, or cost of replacement.

The question, in all cases, will be to determine the basis of valuation which, under the particular circumstances, is "most appropriate to the property and equitable to the claimant." The Commission has concluded that this phraseology does not differ from the international legal standard that would normally prevail in the evaluation of nationalized property and that it is designed to strengthen that standard by giving specific bases of valuation that the Commission shall consider: i.e., fair market value, book value, going concern value, or cost of replacement.

Claimants submitted in support of this claim an acceptable balance sheet for Industrial Bank as of December 31, 1959, reflecting the following:

CU-1615

Assets

| | |
|---|---:|
| Cash on hand and Reserve centralized in National Bank of Cuba | $ 5,420,374.68 |
| Balances with other banks & effects of safe in collection process | 603,894.97 |
| National Public Bonds | 1,105,300.00 |
| Shares of the National Bank of Cuba | 27,000.00 |
| Other Bonds and Shares | 17,200.51 |
| Loans | 5,712,222.67 |
| Buildings owned and occupied by the bank and furniture and fixtures | 361,312.19 |
| Other properties | 45,830.76 |
| Acceptances of clients under commercial credits | 99,191.97 |

Other Assets:

| | | |
|---|---:|---:|
| Remittances in Transit between Branches | $464,828.44 | |
| Bonds Loaned | 107,000.00 | |
| Miscellaneous | 489,961.04 | 1,061,789.48 |
| Total Assets | | $14,454,117.23 |

Liabilities & Capital:

| | | |
|---|---:|---:|
| Deposits | | $13,565,967.37 |
| Acceptances pending under commercial credits made by this bank on its account | | 99,191.97 |
| Other Liabilities | | 78,349.73 |
| Total Liabilities | | $13,743,509.07 |
| Capital | $500,000.00 | |
| Future Reserve | 160,000.00 | |
| Profit not distributed | 50,608.16 | |
| Total Capital | | 710,608.16 |
| Total Liabilities and Capital | | $14,454,117.23 |

CU-1615

The balance sheet enumerates the assets, tangible and intangible, and the liabilities of the enterprise. The excess of assets over contractual liabilities represents the owners' equity, or net worth. The same result may be reached by adding the capital investment, appropriate surplus reserves (not including reserves for depreciation, taxes and the like), and any undivided profit. Accordingly, the calculation of net worth is as follows:

| | |
|---|---|
| Total Assets | $14,454,117.23 |
| Less Contractual Liabilities | 13,743,509.07 |
| Net Worth | $   710,608.16 |

The record indicates that Industrial Bank, at the time of loss, had 5,000 shares of its capital stock, with a nominal value of $100.00 per share, outstanding (44 of which were owned by the claimants herein).

The Commission has considered carefully all evidence of record, and finds that the net worth of $710,608.16 for Industrial Bank is the most appropriate to the property and equitable to the claimants, and finds that such net worth is the amount that would have been available at the time of loss for distribution among the 5,000 shares of stock issued by Industrial Bank. The Commission thus concludes that the dollar loss sustained in connection with the ownership of a stock interest in Industrial Bank was $142.1216 per share of stock issued and held at the time of loss.

Accordingly, in the instant claim the Commission finds that claimant ELMER E. KELLER suffered a loss in the amount of $4,263.65 and claimant ISABEL KELLER suffered a loss in the amount of $1,989.70 within the meaning of Title V of the Act, as a result of the nationalization of the Industrial Bank by the Government of Cuba on October 13, 1960.

The Commission has decided that in certification of losses on claims determined pursuant to Title V of the International Claims Settlement Act of 1949, as amended, interest should be included at the rate of 6% per annum from the date of loss to the date of settlement. (See *Claim of Lisle Corporation*, Claim No. CU-0644).

Accordingly, the Commission concludes that the amount of loss sustained by claimant shall be increased by interest thereon at the rate of 6% per annum from October 13, 1960, the date of loss, to the date on which provisions are made for settlement thereof.

It will be noted that the total amount of loss found herein is in excess of the amount asserted by claimants. However, in determining the amount of loss sustained, the Commission is not bound by any greater or lesser amounts which may be asserted by the claimants as the extent thereof.

CU-1615

CERTIFICATION OF LOSS

The Commission certifies that ELMER E. KELLER suffered a loss as a result of actions of the Government of Cuba, within the scope of Title V of the International Claims Settlement Act of 1949, as amended, in the amount of Four Thousand Two Hundred Sixty-Three Dollars and Sixty-Five Cents ($4,263.65) with interest thereon at 6% per annum from October 13, 1960 to the date of settlement; and

The Commission certifies that ISABEL KELLER suffered a loss as a result of actions of the Government of Cuba, within the scope of Title V of the International Claims Settlement Act of 1949, as amended, in the amount of One Thousand Nine Hundred Eighty-Nine Dollars and Seventy Cents ($1,989.70) with interest thereon at 6% per annum from October 13, 1960 to the date of settlement.

Dated at Washington, D. C., and entered as the Proposed Decision of the Commission

OCT 2 1968

Leonard v. B. Sutton, Chairman

Theodore Jaffe, Commissioner

Sidney Freidberg, Commissioner

The statute <u>does not provide for the payment of claims</u> against the Government of Cuba. Provision is only made for the determination by the Commission of the validity and amounts of such claims. Section 501 of the statute specifically precludes any authorization for appropriations for payment of these claims. The Commission is required to certify its findings to the Secretary of State for possible use in future negotiations with the Government of Cuba.

NOTICE: Pursuant to the Regulations of the Commission, if no objections are filed within 15 days after service or receipt of notice of this Proposed Decision, the decision will be entered as the Final Decision of the Commission upon the expiration of 30 days after such service or receipt of notice, unless the Commission otherwise orders. (FCSC Reg., 45 C.F.R. 531.5(e) and (g) as amended, 32 Fed. Reg. 412-13 (1967).)

NOTICE TO TREASURY DEPARTMENT: The above-referenced securities may have